UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSTIN REED, on behalf of himself all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>VERIFF OU and VERIZON VALUE, INC. d/b/a TOTAL WIRELESS,<br><br>   Defendants. | **Case No.: 1:26-cv-00465-DEH-JW** |
| TRINA STOCKTON,<br><br>   Plaintiff,<br><br>  v.<br><br>VERIFF OU and VERIZON VALUE, INC. d/b/a TOTAL WIRELESS,<br><br>   Defendants. | **Case No.: 1:26-cv-00520-JLR** |
| KELLY MCLAUGHLIN, on behalf of herself and all others similarly situated,<br><br>   Plaintiff,<br><br>  v.<br><br>VERIFF OU and VERIZON VALUE, INC. d/b/a TOTAL WIRELESS,<br><br>   Defendants. | **Case No.: 1:26-cv-00566-JMF** |

**PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE ACTIONS AND APPOINT
INTERIM CLASS COUNSEL AND INTERIM LIAISON COUNSEL**

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all

those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions into to the first-filed action, *Reed v. Veriff OU and Verizon Value, Inc. d/b/a Total Wireless*, No. 1:26-cv-00464, filed on January 19, 2026 ("Reed") as well as any other future actions filed or transferred related actions (collectively, the "Related Actions") against Defendant Veriff OU and Defendant Verizon Value, Inc. d/b/a Total Wireless (collectively "Defendants") under the new case style: "*In re Veriff OU Data Breach Litigation*"; (2) appoint Plaintiffs' leadership structure consisting of Mariya Weekes of Milberg, PLLC, Courtney Maccarone of Kopelowitz Ostrow, P.A., and Neil Williams of Siri & Glimstad LLP ("Proposed Interim Co-Lead Class Counsel"); (3) stay the Related Actions, including any of Defendants' responsive pleading deadlines; and (4) require the filing of a consolidated class action complaint ("Consolidated Complaint") within thirty (30) days of entry of an order consolidating the cases and appointing leadership.

As discussed below, consolidation is proper because each action: (i) is brought against the same Defendants; (ii) is based on the same alleged data incident (the "Data Breach"); (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged factual background and claims asserted in each action, consolidation will streamline litigation and preserve judicial and party resources. [1]

## I.    <u>INTRODUCTION</u>

Plaintiff Dustin Reed filed the first Class Action Complaint against Defendant on January 19, 2026, alleging unauthorized disclosure of personally identifiable information ("PII" or "Private Information") belonging to them and thousands of other individuals affected by the Data Breach.

---

[1] Plaintiffs' counsel agree on consolidation and appointment. Plaintiffs' counsel have not met and conferred with Defendant's counsel on this Motion, as Defendant's counsel has yet to enter an appearance in any of the Related Actions.

Thereafter, two additional Class Action Complaints were filed. Each of these Related Actions arise from the same Data Breach, allege the same operative facts, and assert substantially identical claims on behalf of overlapping putative classes, thus making consolidation into the first-filed *Reed* action, which has the lowest case number, appropriate.

## II.    COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

### A.    The Data Breach

Defendant Veriff is a global identity verification company that provides services to clients, including Defendant Total Wireless ("Clients" or "Defendant Veriff's Clients"). *See Reed,* ECF No. 1, at ¶¶ 2. Defendant Total Wireless is a budget-friendly, no-contract prepaid mobile service that runs on Verizon's extensive 5G network. *Id.*, at ¶¶ 3. Defendant Veriff experienced a Data Breach in which an unauthorized third-party gained access to its IT Network. *Id.*, at ¶¶ 5. Upon discovery, Defendant Veriff launched an investigation to determine the nature and scope of the Data Breach. *Id.* On December 10, 2025, Defendant Veriff notified Defendant Total Wireless that certain customers Private Information was compromised as a result of the Data Breach. *Id.*, at ¶¶ . Upon information and belief, the following types of Private Information were compromised: name, government-issued ID, date of birth, and address. *Id.*, at ¶¶ 7. On January 9, 2026, Defendant Total Wireless began issuing notice letters ("Notice") to impacted customers. *Id.*, at ¶¶ 8.

### B.    Consolidation of the Related Actions

The Related Actions before this Court are substantially the same and consolidation is appropriate. Each lawsuit arises from the same common set of alleged facts: the Data Breach. Due to each Plaintiffs' reliance on the same set of alleged facts, all Plaintiffs assert overlapping claims, on behalf of similarly defined classes, seeking similar relief. The Related Actions, the parties thereto, and the Court will be best served in a consolidated proceeding, which will preserve party and judicial resources.

III.    **ARGUMENT AND AUTHORITIES**

A.    **Legal Standard for Consolidation**

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law *or* fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added).  "Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). "Consolidation is appropriate in order to serve the interests of 'judicial economy' and 'to avoid unnecessary costs or delay.'" *In re Facebook, Inc., IPO Securities & Derivative Litig.*, 288 F.R.D. 26, 34 (S.D.N.Y. 2012) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)).

Rule 42(a) does not require that the actions be identical before they can be consolidated. *See Pinkowitz v. Elan Corp., PLC*, 2002 WL 1822118, at *3 (S.D. N.Y. July 29, 2002). Rather, as long as any confusion or prejudice does not outweigh efficiency concerns, consolidation is appropriate. *See Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. June 9, 1997). "In the exercise of discretion, courts have taken the view that considerations of judicial economy favor consolidation.". *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 245 (S.D.N.Y. 2023)(quoting *Celotex Corp.*, 899 F.2d at 1285).

The following factors are pertinent to the decision of whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc*., No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023).

> **B.    The Related Actions Should be Consolidated with *Reed*.**

The Related Actions involve common questions of law and fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party. The Court should therefore consolidate all Related Actions with the first-filed *Reed* action.

The only requirement set out in Rule 42(a) for consolidation is that the cases involve "a common question of law or fact." Fed. R. Civ. P 42(a). This requirement is plainly met here. Each action arises out of the same Data Breach. The complaints in the Related Actions allege that the Data Breach compromised Plaintiffs' and putative Class Members' Private Information. Because they concern the same Data Breach, it is no surprise that the actions also share similar putative class definitions, covering substantively the same putative Class Members. All Related Actions likewise assert overlapping causes of action seeking similar forms of relief, including claims for negligence, negligence *per se*, breach of third-party beneficiary contract, and unjust enrichment. Thus, the Related Actions center around the same conduct with nearly identical facts.

Federal courts, including this District, routinely consolidate cases where this occurs, including in recent data breach class action lawsuits. *See Marcaurel v. USA Waste-Mgmt. Res., LLC,* No. 21-CV-6199 (VSB), 2021 WL 4940977, at *2 (S.D.N.Y. Sept. 3, 2021)(" Here, consolidation is plainly warranted, as the Related Actions each arise from the same event—the alleged data breach of WM's computer systems—and all assert similar theories of named Plaintiffs' and putative class members' entitlement to relief."); *Stewart v. Practice Resources LLC,* 2022 WL 17155996 (N.D. N.Y., Nov. 22, 2022) ("Crucial factual and legal questions regarding the [d]ata

[b]reach and its causes and consequences are common to both actions… [a]ccordingly the Court consolidates the … actions[.]”); *Beasley v. TTEC Servs. Corp.,* Case No. 22-cv-00097-PAB NYW (D. Colo., Apr. 8, 2022) (“Because these [data breach] cases involve the same underlying facts and the same defendant, it is in the interest of judicial economy and efficiency to have these cases heard by the same judge.”); *McPherson v. Am Bank Sys., Inc.,* Case No. CIV-20-1307-G (W.D. Okla, Mar. 11, 2021) (“Here, both lawsuits are putative class actions asserting identical claims against the same Defendant arising from the same data breach.”). *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding consolidation appropriate because “Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack”); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) (“it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged” data privacy incident). Here, too, the Related Actions assert nearly identical claims against the same Defendants.

In addition to satisfying the primary requirement for consolidation (i.e. common questions of fact and law), all other relevant considerations weigh heavily in favor of consolidation. Notably, all Parties agree to consolidation, with Defendants noting that they do not oppose the relief sought in this motion. All the cases are pending in this same judicial district, obviating the need for any transfers.

Consolidation will further the convenience of the Parties and witnesses. In this case, consolidation is highly appropriate as there are virtually no costs associated with consolidation, only substantial benefits. For example, Plaintiffs anticipate they will seek the production of substantially the same documents and will seek to depose the same individuals. Without

consolidation, there will be duplicative discovery demands and overlapping, competing and (perhaps) inconsistent motion practice. Consolidation will solve this problem by enabling a single judge with all the parties present to formulate a pretrial plan that will minimize party and witness inconvenience and overall expense for all parties. *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 158 F.R.D. 562, 570 (S.D. N.Y. Nov. 28, 1994) ("Avoiding unnecessary paperwork is a proper reason to use a consolidated complaint for pretrial purposes.").

Also, none of the parties in the Related Actions will be prejudiced by consolidation. The three complaints all have been filed recently, and none has proceeded to a point where consolidation would create undue delay or any prejudice. To the contrary, consolidation will result in the filing of a single consolidated operative complaint instead of three, as well as the briefing of a single motion to dismiss instead of three.

The Court should therefore consolidate the Related Actions into this first-filed *Archer* action.

## C.    Legal Standard for Appointment of Interim Co-Lead Class Counsel

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc*., No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc*., 318 F.R.D. 17, 18 (S.D. N.Y. 2016); *In re Mun. Derivatives Antitrust Litig*., 252 F.R.D. 184, 186 (S.D.N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### i.   *Appointment of Interim Co-Lead Class Counsel and Interim Liaison Counsel is Appropriate*

Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel possess the necessary resources to prosecute this litigation, have the support of the vast majority of the Plaintiffs named in the Related Actions, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support

of most of the Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Co-Lead Class Counsel's and Interim Liaison Counsel's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

> a. ***Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.***

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig*., No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Breach, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things:

- Investigating the facts surrounding the Data Breach;
- Interviewing numerous individuals injured by the Data Breach;
- Researching legal claims;
- Drafting initial pleadings; and
- Organizing Plaintiffs and their counsel and discussing consolidating the Related Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

Given the scope of the Data Breach and the number of people potentially affected, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel worked to quickly organize

and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

### b.    *Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.*

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (appointing class counsel with substantial experience in class actions and demonstrated knowledge of the relevant law). Proposed Interim Co-Lead Class

Counsel and Interim Liaison Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

### 1. Proposed Interim Co-Lead Class Counsel

#### *Mariya Weekes of Milberg, PLLC*

 Mariya Weekes is a partner at the international plaintiffs' class action firm Milberg, PLLC ("Milberg"). Since Milberg's founding in 1965, it has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[2] Milberg has been instrumental in obtaining

---

[2] *See, e.g., In re Tyco International Ltd., Securities Litigation*, MDL 1335 (D.N.H.) (serving as

precedent setting decisions at every level, including at the United States Supreme Court.[3] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of corporate and other large-scale wrongdoing. Milberg is recognized as having one of the most respected data privacy practice groups in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024). Law360 recently highlighted Milberg's work in the privacy space. Milberg has more than 100 attorneys on staff and has offices across the United States and the European Union.

Ms. Weekes is a former Florida State Circuit Court Judge, elected to the bench by her constituents. As a Florida Circuit Court Judge, she presided over thousands of complex cases, hundreds of trials, and motions. In her capacity as a Circuit Court Judge, she served on the Circuit's appellate panels reviewing appeals from the lower trial Courts and administrative agencies. Before ascending to the bench, she practiced as a trial lawyer representing individuals and corporations in complex cases throughout the State of Florida. As a practicing attorney, she has personally tried dozens of jury trials to verdict and has participated in many significant cases. Both as a civil trial lawyer and former prosecutor, she has handled complex cases from their inception through appeal.

After stepping down from the bench, Ms. Weekes joined Milberg's Cybersecurity and Data Privacy Group, which has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.*, *In Re: Hot Topic Data Breach Litigation*, No. 2:24-cv-9215-MEMF-AS (C.D. Cal.) (Ms. Weekes appointed co-lead counsel in a consolidated action involving more than 57 million customers);*In*

---

lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Insurance Co. Sales Practice Litigation*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[3] *See* https://milberg.com/precedent-setting-decisions/page/3/.

*re Meta Android Privacy Litigation.*, No. 3:25-cv-04674-RFL (N.D. Ca.)  (Ms. Weekes appointed as Co-Lead Counsel in a consolidated action involving millions of Google's android users); *In Re: LoanCare Data Security Breach Litig.*, No. 3:23-cv-1508-MMH-MCR (M.D. Fla.) (where Ms. Weekes was appointed co-lead counsel in a consolidated action involving more than 1.3 million consumers); *In re SitusAMC Holdings Corporation Data Breach Litigation*, No. 1:25-cv-9748 (S.D. NY) (Ms. Weekes appointed as Co-Lead counsel in a consolidated action involving over 5 million customers); *In Re: Berry, Dunn, McNeil & Parker Data Security Incident Litigation.*, No. 2:24-cv-00146 (D. Maine) (Ms. Weekes was appointed to the executive committee in a consolidated action involving 1.1 million consumers); *Reichbart v. Financial Business and Consumer Solutions, Inc*., No. 24-cv-1876 (E.D. Penn.) (Ms. Weekes was appointed chair of the Plaintiffs' Executive Committee in a consolidated action involving more than 1.9 million consumers);  *Morrison et al. v. Family Dollar Stores, LLC, et al*., 0:24-cv-60294-AHS (S.D.Fl.) (Ms. Weekes was appointed as co-lead counsel in a consolidated consumer protection class action involving adulterated mediations impacting thousands of consumers across 19 States); *Javid et al. v. Finsatra Technology, Inc.*, No. 6:25-cv-1284-PGB-DCI (M.D. Fla.) (Ms. Weekes appointed Co-Lead Counsel in a consolidated action involving over 800,000 customers); *In Re ConnectonCall.com Data Breach Litigation*, Case No. 2:24-cv-08790-SJB-JMW (E.D NY) (Ms. Weekes appointed Interim Co-Lead Counsel);  *Zayatz v. Akumin Operating Corp*., Case No. 0:24-cv-62439-RS (S.D. Fl) (Ms. Weekes appointed Interim Co-Lead Counsel); *Owings v. Medusind, Inc*., 1:25-cv-20117-RAR (S.D. Fl) (Ms. Weekes appointed interim co-lead counsel); *W. v. LivaNova USA, Inc.,* Case No. 4:24-cv-02250 (S.D. Tex.) (Ms. Weekes was appointed Interim Co-Lead Counsel); *In re Coastal Orthopedics & Sports Medicine of Southwest Florida Data Breach Litig.,*  Case No. 2024-CA-1078AX (12th Judic. Circ. Ct. of Fla., Manatee Cnty) (Ms. Weekes was

appointed Interim Class Counsel); *Lomedico v. MarineMax, Inc.*, Case No. 8:24-cv-1784-MSS-AEP (M.D. Fla.) (appointed joint Interim Class Counsel); *In re TRC Staffing Services, Inc. Data Breach Litig.*, Case No. 1:24-cv-02398-VMC (N.D. Ga.) (Ms. Weekes was appointed co-lead counsel); *Lepore et al v. Affiliated Dermatologists & Dermatologic Surgeons, P.A.*, Case No. MRS-L-001091-24 (Ms. Weekes was appointed Interim Class Counsel); *Owens et al v. MGM Resorts International, et al.,* Case No. 2:23-cv-01480-RFB-MDC (D. Nev.) (Ms. Weekes was appointed to Plaintiffs' Steering Committee); *Mckinley v, Doxim, Inc*. Case No. 2:24-cv-11550-TGB-CI (E.D. Mich.) (Ms. Weekes was appointed co-lead counsel); *Cucuta v. FloridaCentral Credit Union,* Case No. 24-CA-006065 (Hillsborough County, Fl.) (Ms. Weekes was appointed co-lead counsel).; *In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Milberg was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).[4] Milberg's Cybersecurity and Data Privacy Group is largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

---

[4] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Milberg is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Milberg is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

Ms. Weekes firm resume is attached hereto as **Exhibit A**..

***Courtney Maccarone of Kopelowitz Ostrow P.A.***

Courtney E. Maccarone is a partner of Kopelowitz Ostrow P.A. where she focuses her practice on consumer class action litigation. Ms. Maccarone has dedicated the entirety of her legal career to representing consumers. With more than 13 years of experience, she has focused her practice on prosecuting consumer class actions and has a significant amount of experience litigating class actions involving data breaches and other privacy-related cases, most recently in: *In re: MOVEit Customer Data Security Breach Litigation*, Case No. 1:23-md-03083 (D. Mass) (member of settlement committee in multi-track data breach MDL comprised of voluminous defendants and actions); *In re SAV-RX Data Breach Litigation*, Case No. 8:24-cv-204 (D. Neb.) (appointed Interim Co-Lead Class Counsel); *In re: The Business Council Of New York State, Inc., Data Breach Litigation*, Index No. 908769-25 (Albany Cnty, N.Y.) (appointed Interim Co-Lead Class Counsel); *Martinelli et al. v. International Game Technology, et al.*, Case No. 2:25-cv-01917 (D. Nev.) (appointed Interim-Co-Lead Class Counsel); *In re Tycon Medical Systems, Inc., Data Security Breach Litigation*, Case No. 2:25-cv-19 (E.D. Va.) (appointed Interim Co-Lead Class Counsel); *Corralejo v. Baymark Health Services, Inc.*, Case No. 4:25-cv-174 (E.D. Tex.) (appointed Interim Class Counsel); *Stoudemire et al v. Lee Enterprises, Inc.*, Case No. 22-CV-00086 (S.D. Iowa) (counsel in class action resulting in $9.5 million settlement); *Kholyusev et al. v. Welfare & Pension Administration Service, Inc.* Case No. 22-2-04152 (Wash. Sup. Ct.) (co-lead counsel in data breach class action and secured a settlement valued up to $1,750,000).

Beyond her personal expertise, Ms. Maccarone brings the extensive experience of her firm. KO is one of the leading class action law firms in the United States. KO has is a well-established and successful firm that has handled class actions in state and Federal courts throughout the

country. KO will provide the resources and personnel necessary to pursue a case of this magnitude, a fact they have demonstrated in previous data breach class actions.

For example, KO is counsel of record in approximately 300 pending data breach cases, including some of the largest in the country. KO is Lead Counsel in MDL-3090, *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. 24-md-3090 (S.D. Fla.), which involves 10 defendants and 6 million people, and settled for $27 million. Additional examples of data breach cases in which KO serves as Lead Counsel include: *In Re: AT&T Inc. Customer Data Sec. Breach Litig.*, 3:24-cv-00757 (N.D. Tex.), which settled for $177 million; *McNally, et al. v. Infosys McAmish Sys., LLC*, 1:24-cv-00995 (N.D. Ga.), which settled for $17.5 million; *Owens v. MGM Resorts Int'l*, 2:23-cv-01480-RFB-MDC (D. Nev.), which settled for $45 million; *Harrell v. WebTPA Employer Servs. LLC*, No. 3:24-cv-01160 (N.D. Tex.), which settled for $13.75 million; *In re Berry, Dunn, McNeil & Parker Data Sec. Incident Litig.* (D. Me.), which settled for $7.25 million; *Mclean v. Signature Performance, Inc.*, No. 8:24-cv-230 (D. Neb.), which settled for $8.5 million; *Crowe v. Managed Care of N. Am., Inc.*, No. 23-cv-61065 (S.D. Fla.), affecting 8.9 million individuals; *Stallone v. Fin. Bus. & Consumer Sols., Inc.*, No. 2:24-cv-01876 (E.D. Pa.), affecting almost two million individuals; *In re HealthEquity, Inc. Data Sec. Incident Litig.*, No. 2:24-cv-528 (D. Utah), affecting 4.3 million patients; *Butler v. Acadian Ambulance Serv., Inc.*, No. 6:24-cv-01011 (W.D. La.), affecting 3 million patients; and *In re DISA Global Data Breach Litig.*, No. 4:25-cv-00821 (S.D. Tex.), affecting 3.3 million individuals. Moreover, KO has court-appointed positions in MDLs including *In In re: Evolve Bank & Trust Customer Data Breach Litig.*, MDL No. 3127 (W.D. Tenn.), which settled for $17.0 million, as well as *In re: Snowflake, Inc., Data Breach Litig.*, MDL No. 3126 (D. Mont.); *In re: Consumer Vehicle Driving Data Tracking Collection*, MDL No. 3115 (N.D. Ga.); *In re Change Healthcare, Inc. Data Breach Litig.,* MDL

No. 3108 (D. Minn.); and *In re: PowerSchool Holdings, Inc. Customer Data Sec. Breach Litig.*, MDL No. 3149 (S.D. Cal.).

Ms. Maccarone has worked productively with Proposed Interim Co-Lead Class Counsel in many other cases. She is confident that this proposed leadership structure will result in an excellent recovery for all clients and Class Members.

Ms. Maccarone's firm resume is included hereto as attached as **Exhibit B**.

### *Neil Williams of Siri & Glimstad LLP*

Neil Williams is a senior attorney at Siri & Glimstad LLP, a premier national class action law firm of over 100 dedicated professionals that regularly serves as court-appointed class counsel in high-stakes litigation nationwide and has recovered compensation for millions of individuals. Mr. Williams' practice as a Senior Attorney in the Firm's Data Breach Litigation Practice concentrates on complex civil litigation and consumer class actions, with a particular emphasis on data privacy. Mr. Williams is actively involved as a lead participant in the Firm's data privacy matters, representing clients in dozens of data breach class action matters in which S&G served or is currently serving as (1) settlement class counsel, including, without limitation:

- *Owens, et al. v. US Radiology Specialists, Inc., et al.*, Case No. 22-CVS-17797 (N.C. Sup. Ct., Mecklenburg Cty.), which received final approval for a settlement that includes a non-reversionary settlement fund of $5,050,000 involving 1,300,000 class members;
- *In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100 (D. Mass.), which received final approval for a settlement involving 490,000 class members and a $3,534,128.50 non-reversionary settlement fund;
- *In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.), a payment card breach case which received final approval for a settlement that includes a non-reversionary settlement fund of $3,250,000.00 for a settlement involving 325,000 class members;
- *In re: Planet Home Lending, LLC Data Breach*, Case No. 3:24-cv-127 (D. Conn.), which received final approval for a settlement involving 285,000 class members and a $2,425,000.00 non-reversionary settlement fund;

- *In re Unite Here Data Security Incident Litigation*, Case No. 1:24-cv-01565 (S.D.N.Y.), which received final approval for a settlement involving roughly 790,000 class members and a $6 million non-reversionary settlement fund;
- *Hefstetler, et al. v. Upstream Rehabilitation, Inc., et al*., Case No. 2024-902563.00 (AL Cir. Ct., Jefferson Cty.), which received final approval for a settlement involving roughly 545,000 class members and a $4,304,898.50 non-reversionary settlement fund;
- *Reedy, et al. v. Everlywell, Inc., et al.*, Case No. 1:24-cv-02713 (N.D. Ill.), an internet surveillance matter which received final approval for a settlement involving 2 million class members and a $5,000,000 non-reversionary settlement fund;
- *In re Retina Group of Washington Data Security Incident Litigation*, Case No. 8:24-cv-00004 (D. Md.), which received final approval for a settlement involving 450,000 class members and a $3.6 million non-reversionary settlement fund;
- *Terrance Rosa, et al. v. Brightline, Inc.*, Case No. 24-md-03090 (S.D. Fla.), which received final approval for a settlement involving over 1 million class members and a $7,000,000 non-reversionary settlement fund;
- *In re Berry, Dunn, McNeil & Parker Data Security Incident Litigation*, Case No. 2:24-cv-00146 (D. Me.), which received final approval for a settlement involving 2 million class members and a $7.25 million non-reversionary settlement fund;
- *Corona-Cantu v. Ingo Money, Inc.*, Case No. 1:24-cv-03023 (N.D. Ga.), which received final approval for a settlement involving 27,000 class members and a $1.5 million non-reversionary settlement fund; and
- *In re Hospital Sisters Health System Data Breach Litigation*, Case No. 2024CH000043 (Ill. Cir. Ct., Sangamon Cty.), which received final approval for a settlement involving 868,000 class members and a $7.6 million non-reversionary settlement fund;

and **(2) <u>court-appointed interim class counsel</u>**, including, without limitation:

- *Pacheco et al. v. Community First Medical Center*, Case No. 2023-CH08487 (Cir. Court of Cook Cty., Ill.);
- *Wilson et al. v. Frontier Communications*, Case No. 3 :24-cv-1418 (N.D. Tex.);
- *Harrison, et al. v. Peco Foods Inc.*, Case No. 7:24-cv-01028 (N.D. Ala.);
- *Gregorio, et al. v. Green Diamond Resource Company*, Case No. 2:24-cv-00596 (W.D. Wash.);
- *In re Landmark Admin LLC Data Incident Litigation*, Case No. 6:24-CV-082 (N.D. Tex.);
- *In re OnePoint Patient Care, LLC, Data Breach Litigation*, Civil Action No. 3:24-cv-00649 (W.D. Ky.);
- *Kranz-Mitchell, et al. v. Excelsior Orthopaedics, LLP, et al.,* Case No. 812753/2024 (NY Supreme Ct., Erie Ct.);
- *Wood, et al v. Gryphon Healthcare LLC,* Case No. 4:24-cv-3946 (S.D. Tex.);
- *Canup, et al. v. Gas Express, LLC,* Case No. 1:25-cv-00396 (N.D. Ga.);
- *In re Anna Jaques Hospital Data Security Incident Litigation*, Case No. 1:24-cv-10792 (D. Mass.);
- *Edri, et al. v. Advanced Recovery Equipment & Supplies, LLC*, Case No. 529489/2024 (NY Sup. Ct., Kings Cty.);

- *Carter, et al v. MyHeritage (USA) Inc., et al*, Case No. 1:25-cv-224 (N.D. Ill.);
- *Haseltine, et al v. Financial Business and Consumer Solutions, Inc.*, Case No. 24-1876 (E.D. Pa.);
- *Flores, et al. v. South Texas Oncology and Hematology, PLLC*, Case No. 2024CI13299 (Tex. Dist. Ct., Bexar Cty.);
- *In re Cooper Health System Security Incident Litigation*, Case No. 1:25-cv-05841 (D.N.J.);
- *In re iHeart Media Data Breach Litigation*, Case No. 5:25-cv-00538 (W.D. Tex.);
- *Waudby, et al. v. Precision Tax Relief, LLC*, Case No. 2:25-cv-00301 (D. Id.);
- *Levin v. Albany College Pharmacy and Health Services*, Index No. 906277-25 (NY Sup. Ct., Albany Cty.);
- *Bernal v. Amalgamated Sugar Company*, Case No. CV01-25-12333 (4th Dist. of Id., Ada Cty.);
- *Minter v. Finwise Bank, et al.*, Case No. 2:25-cv-00569 (D. Utah);
- *Leuch, et al. v. Greater Pittsburgh Orthopaedic Associates, Inc.*, Case No. GD-25-009211 (Pa., Allegheny Cty.);
- *Doktor, et al. v. Good Neighbors Federal Credit Union*, Case No. 808163/2025 (N.Y. Sup. Ct., Erie County); and
- *Correa v. Anne Arundel Dermatology, P.A.*, Case No. 1:25-cv-02274 (the Court highlighting S&G's "wealth of experience" and "strong command" of data privacy law)

Mr. Williams and S&G are fully prepared to dedicate the time and resources necessary to effectively represent the putative class in this matter. Further details about Mr. Williams, as well as Siri & Glimstad's class action group, are included in the firm resume submitted herewith as **Exhibit C**.

### c.    *Additional Factors Supporting Formal Designation of Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel*

Plaintiffs' support for the proposed leadership structure also weighs in favor of appointing Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel. Notably, the proposed leadership structure has the support of the named Plaintiffs and firms from all Related Actions. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17,

2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.* It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel have been appointed to leadership positions together in numerous other class actions cases. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a

leadership committee working together for the first time." *Id*. Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Co-Lead Class Counsel and Interim Liaison Counsel because their firms collectively filed all pending actions against Defendant.

Accordingly, Proposed Interim Co-Lead Class Counsel's and Interim Liaison Counsel's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the proposed classes interests under the factors enumerated in Fed. R. Civ. P. 23, and Plaintiffs' motion should be granted.

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) consolidating the Related Actions and future actions into the first filed action, under the new case style: "*In re Veriff OU Data Breach Litigation*"; (2) appointing Ms. Weekes, Ms. Maccarone and Mr. Williams as Interim Co-Lead Counsel; (3) staying the Related Actions, including the Defendant's responsive pleading deadlines, and (4) setting a deadline for

the filing of a single Consolidated Complaint thirty (30) days after the court's order consolidating the cases and appointing leadership.

DATED: January 23, 2026,                    Respectfully submitted,

/s/  Mark K. Svensson
Mark K. Svensson (NY Bar No: 5974290)
**MILBERG, PLLC**
405 East 50th Street, Suite 408
New York, New York 10022
Tel.: (202) 975-0468
msvensson@milberg.com

Mariya Weekes (*pro hac vice* forthcoming)
**MILBERG, PLLC**
333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Tel: (866) 252-0878
mweekes@milberg.com

Courtney Maccarone
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
maccarone@kolawyers.com

Neil Williams
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: nwilliams@sirillp.com

*Proposed Interim Co-Lead Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated via electronic mail on this the 23rd day of January 2026.

<u>/s/ *Mark K. Svensson*</u>

Mark K. Svensson